UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PETER DITTMER, | § |
| | § |
|     *Plaintiff*, | § |
| | § |
| v. | §     CIVIL ACTION NO. 10-182 |
| | § |
| TEXAS SOUTHERN UNIVERSITY *et al.*, | § |
| | § |
|     *Defendant*s. | § |

## MEMORANDUM AND ORDER

Pending before the court is defendants Texas Southern University, John M. Rudley, and Charles M. Glass's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Dkt. 6. After consideration of the plaintiff's complaint, the defendants' motion, and the applicable law, the defendants' motion to dismiss the § 1983 claims against TSU, Rudley, and Glass, in their official capacities; § 1981 claims; Texas Education Code claims; Texas Labor Code claims; state tort claims; and exemplary damages is GRANTED. Only plaintiff's Title VII claims against TSU, and the § 1983 claims against Rudley and Glass in their individual capacities remain.

## BACKGROUND

Texas Southern University (TSU) is a state-chartered university located in Houston, Harris County, Texas and has been recognized by the United States Department of Education's register of Historically Black Colleges and Universities. Dkt. 8. The President of TSU is John M. Rudley. Dkt. 8. Peter M. Dittmer first became employed in 1995 as an assistant professor in the Aviation Science and Technology Department (AST), which is part of the College of Science and Technology (COST) of TSU, and was also a co-coordinator of the AST. Dkt. 8. Dittmer had the authority to recommend and award scholarships and various other types of incentives to students, both to reward

strong performance by students and to use as a recruiting tool to attract students to the AST. Dkt. 8.

In the course of his employment, Dittmer learned of a certain scholarship device, known as the rebate/ waiver mechanism, that was, at the time, widely practiced throughout TSU. Dkt. 8. The program selected students to receive assistance pursuant to the program for a given year. The said student would pay into TSU's scholarship fund, whereupon the COST would grant the student a tuition rebate. Dkt. 8. Accounting was done by the secretary of the Dean of COST and at no time did Dittmer request that any funds be paid to him for his personal benefit. Dkt. 8. Neither did he accept or keep any of the students' funds for himself or apply them to any use other than student scholarships. Dkt. 8.

In 2006, TSU decided an additional instructor was needed at the AST, and required that the applicant hold a Ph.D. degree, have an aviation science background, and be of African-American descent. Dkt. 8. Eventually, Charles Glass, an African-American, was hired for the position, over Dittmer's objections because of Glass's lack of recent aviation experience. Dkt. 8. Dittmer contends that Glass was hired solely because he was an African American with a Ph.D. Dkt. 8. Friction developed between Glass and Dittmer after Dittmer favored terminating Glass over an incident Glass had with a Caucasian student. John M. Rudley, the new president, decided against terminating Glass. Dkt. 8. Glass later commented to both the President of TSU and the Dean of the COST that some alumni were unhappy with Dittmer as the head of the aviation program, and that a person of African-American descent should be appointed head of the department. Dkt. 8.

In April 2008, the Office of General Counsel of TSU directed the TSU Office of Internal Audit to investigate allegations of financial misconduct by Dittmer in his handling and

administration of student scholarships.  Dkt. 8.  A criminal investigation was opened with the TSU police department into alleged criminal misappropriation of funds and fraud.  Dkt. 8.  Dittmer was never convicted of any wrongdoing, and the criminal proceedings were terminated in Dittmer's favor.  Dkt. 8.

In December 2008, Dittmer was informed that his employment with TSU was terminated immediately in accordance with the section of the faculty manual pertaining to termination of university officials for "good cause," but did not indicate what the "cause" might have been.  Dkt. 8.  TSU allegedly disregarded written procedures and the due process guaranteed to TSU professors, in which a professor who is to be terminated is entitled to a hearing before a faculty committee prior to such termination.  Dkt. 8.

Dittmer brings claims against TSU, Rudley, and Glass (in their official and individual capacities) for violations of Title VII, § 1981, § 1983, the Texas Education Code, the Texas Labor Code, and a variety of intentional and negligence torts under state law.  Dkt. 8.

## ANALYSIS

Defendants move the court to dismiss Dittmer's § 1983 claims against TSU, Rudley and Glass, in their official capacities; § 1981 claims; Texas Education Code claims; Texas Labor Code claims; and Texas tort claims against TSU, Rudley, and Glass in their official capacities under Rule 12(b)(1) because the court lacks subject matter jurisdiction due to TSU's sovereign immunity under the Eleventh Amendment.  Dkt. 6.  Additionally, defendants move to dismiss the Texas tort claims against Rudley and Glass in their individual capacity based on the "election of remedies" provision in the Texas Civil Practice & Remedies Code. Dittmer contends that TSU's sovereign immunity

under the Eleventh Amendment has been waived and, therefore, all his claims should survive the motion to dismiss.

**A.     Sovereign Immunity**

*1.     Standard of Review*

Federal Rule of Civil Procedure 12(b)(1) allows dismissal of an action where the court lacks subject matter jurisdiction. A Rule 12(b)(1) motion should be granted only "if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Castro v. United States,* 560 F.3d 381, 386 (5th Cir. 2009). The party asserting jurisdiction bears the burden of proof for a Rule 12(b)(1) motion to dismiss. *Id.*; *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). The court may consider any of the following in ruling on a Rule 12(b)(1) motion: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008).

The Eleventh Amendment established the doctrine of sovereign immunity and bars a state's citizen from filing suit against the state, state universities, or university officials in federal court unless the state has waived this immunity. *Nelson v. Univ. of Tex. at Dallas,* 535 F.3d 318, 320 (5th Cir. 2008) (*citing McCarthy ex rel. Travis v. Hawkins,* 381 F.3d 407, 412 (5th Cir. 2004)) ("[T]he principle of state-sovereign immunity generally precludes actions against state officers in their official capacities . . ."). The Texas Legislature must waive immunity in order for a state university to be subject to a lawsuit. TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(d); TEX. EDUC. CODE ANN. §§ 106.01–.02; *Tex. S. Univ. v. Cape Conroe Prop. Owners Ass'n, Inc.,* 245 S.W.3d 626, 629 (Tex. App.—Beaumont 2008, no pet.). In order for the state to waive sovereign immunity, the

Legislature must waive it "by clear and unambiguous language." *Univ. of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex. 1994). Furthermore, for a state to waive Eleventh Amendment immunity, "it must specify the State's intent to subject itself to suit in federal court." *Martinez v. Tex. Dept. Of Criminal Justice,* 300 F.3d 567, 575 (5th Cir. 2002) (*citing Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 306, 110 S. Ct. 1868 (1990)). Therefore, to defeat a claim of sovereign immunity, the plaintiff must show that the state has waived its sovereign immunity in the situation at hand with clear and unambiguous language, and that language must specify that the state is waiving sovereign immunity in federal court. *Id.*

   *2.   Analysis*

   Dittmer argues that Texas has in fact waived TSU's sovereign immunity, and specifically cites to Texas Education Code § 106.38, which governs suits against TSU. Dittmer relies on the case of *City of La Porte v. Barfield* to argue that the language in § 106.38 waives sovereign immunity. 898 S.W.2d 288 (Tex. 1995). Specifically, Dittmer focuses on the difference in language between the original bill submitted to the legislature on Nov. 10, 1986, and the final bill published on April 14, 1987, which removed language regarding sovereign immunity. The removed language stated that "the [TSU] board has the power to sue and be sued in the name of the university," and that "the section does not grant legislative consent for suits against the board or the university except as authorized by law." *See* Tex. H.B. 15, 70th Leg. R.S. (1987). Dittmer reasons that since the immunity-preserving language was removed without explanation, then the only reasonable conclusion that gives any meaning to the final version of § 106.38 is that this section in fact waives sovereign immunity—although acknowledging it is not a model of "perfect clarity." Furthermore,

Dittmer argues that the § 106.38 will not have any meaning if construed in any way other than waiving sovereign immunity.

The court finds Dittmer's arguments unavailing. First, even if § 106.38 were a waiver of sovereign immunity, it would only be a waiver of sovereign immunity in state court and would not authorize lawsuits in federal court. *Martinez,* 300 F.3d at 575. A state's waiver of Eleventh Amendment immunity in federal court must be "stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Martinez,* 300 F.3d at 575 (internal quotation marks omitted; quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 239–240, 105 S. Ct. 3142 (1985)). Dittmer has not shown the court any language that meets the requirements set forth in *Martinez* and fails to show the court an express waiver of sovereign immunity in federal court.

Second, Dittmer puts too much emphasis on the difference between the two bills. The final published bill does not contain any language that waives sovereign immunity, let alone mentions immunity. Other cases demonstrate that it is not necessary to have language affirmatively granting sovereign immunity, as it is already given to the states by the Eleventh Amendment, but there needs to be clear and unambiguous language that *waives* sovereign immunity. *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex. 1997), *superseded by statute on other grounds as noted in Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.,* 39 S.W.3d 591, 593 (Tex. 2001). While Dittmer raises a discrepancy between the bills, the difference between the unpublished and published bill is not with regard to language that waives sovereign immunity, but rather to language that unnecessarily protects sovereign immunity.

Finally, § 106.38 is best read as a more specific venue clause than the general venue clause contained in the Texas Tort Claims Act, specifying the exact venue that is appropriate for lawsuits against TSU. *See Tex. S. Univ. v. Fed. Sign,* 889 S.W.2d 509 (Tex. App.—Houston 1994, aff'd 941 S.W.2d 401 (Tex. 1997)) (holding § 106.38 does not contain any language granting the TSU board of regents the right to sue or be sued, but merely establishes venue for suits). Other courts are in agreement. *See KDF v. Rex.* 878 S.W.2d 589, 595 (Tex. 1994) ("[T]he Kansas mandatory venue statute does not violate any Texas public policy. Indeed, Texas has similar statutes that serve the same purpose . . . by providing state agencies with a convenient venue in which to litigate").

Therefore, because the Legislature has not waived sovereign immunity for TSU, Dittmer's claims for violations of § 1983 against TSU, Rudley and Glass, in their official capacities;  § 1981; the Texas Education Code; and the Texas Labor Code must be dismissed. With respect to the § 1983 claims, because there has not been a waiver of sovereign immunity, defendants TSU, Rudley, and Glass, in their official capacities, cannot be found as "persons" under 42 U.S.C. § 1983. *See Will v. Mich. Dept. of State Policy,* U.S. 58, 66–67, 109 S. Ct. 2304 (1989) ("[E]leventh Amendment bars such suits unless the state has waived its immunity."). Dittmer's reliance on *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S. Ct. 2702 (1989), for the proposition that the defendants can be found as persons is misplaced—*Jett* dealt with a municipality, not a state entity, and the Supreme Court has been clear these are not the same. *See Owen v. City of Indep., Mo.*, 445 U.S. 622, 638, 100 S. Ct. 1398 (1980). Likewise, Dittmer's § 1981 claims are barred by Eleventh Amendment immunity, absent an express waiver by the state. *See Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981). Dittmer's Texas Education Code claims fail because he has not shown the court any language in which the state has expressly waived its immunity to be sued in

federal court for such claims. Finally, courts have specifically ruled that claims under the Texas Labor Code can be brought against state entities in state court, but not in federal court. *See Perez v. Region 20 Educ. Serv. Ctr.,* 307 F.3d 319, 332 (5th Cir. 2002). Accordingly, the defendants' motion to dismiss pursuant to Rule 12(b)(1) is granted with respect to Dittmer's § 1983 claims against TSU, Rudley, and Glass, in their official capacities; § 1981 claims; Texas Education Code claims; and Texas Labor Code claims.

## B.  State Tort Claims and Exemplary Damages

Defendants move to dismiss the host of intentional and negligence tort claims against TSU, Rudley, and Glass, in their official capacities, because they are also immune from such suits. Dkt. 6 at 5. Dittmer basically concedes this point, having not addressed this issue in his response. *See* Dkt. 7. Based on the case law, it is clear that Dittmer's tort claims against TSU, Rudley, and Glass, in their official capacities, must be dismissed. *See, e.g.* TEX. CIV. PRAC. & REM. CODE § 101.021. (waiving immunity in very limited circumstances involving "property damage, personal injury, or death" if the injury arises from the operation or use of a motor-driven vehicle or moto-driven equipment and other factors are met); *Id.* at § 101.057 (immunity not waived for intentional torts). Therefore, the tort claims against TSU, Rudley, and Glass, in their official capacities, are dismissed.

Additionally, defendants move to dismiss the tort claims against Rudley and Glass in their individual capacities because of the "election of remedies" provision in Texas Civil Practice & Remedies Code § 101.106. Section 101.106(e) states that "if a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. § 101.106(e). Dittmer argues, however, that he brings his tort claims under Texas Education Code § 106.38, and, therefore,

8

these claims are brought under a separate waiver of sovereign immunity and are not subject to the election of remedies provision. Dittmer's argument, however, fails for the same reasons his earlier arguments regarding § 106.38 failed—that section is a venue clause, not a waiver of sovereign immunity and cannot be the basis for his tort claims. Accordingly, the election of remedies provision applies and the tort claims against Rudley and Glass in their individual capacities are dismissed.

Finally, Dittmer also brings a claim for exemplary or punitive damages as seen fit by the court. While Dittmer did plead causes of action which give rise to exemplary damages (i.e., tort claims, Texas Labor Code claims, and § 1981 claims), those causes of action have been now been dismissed. Thus, the exemplary damages must also be dismissed.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss the § 1983 claims against TSU, Rudley, and Glass, in their official capacities; § 1981 claims; Texas Education Code claims; Texas Labor Code claims; state tort claims; and exemplary damages is GRANTED. Only plaintiff's Title VII claims against TSU, and § 1983 claims against Rudley and Glass in their individual capacities remain.

It is so ORDERED.

Signed at Houston, Texas on August 5, 2010.

_____
Gray H. Miller
United States District Judge

9